United States Courts
Southern District of Texas
FILED

January 19, 2021

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jerome E. Huff | ) | |
| Plaintiff, In Pro Persona | ) | CIVIL ACTION |
| | ) | |
| v. | ) | ORIGINAL COMPLAINT |
| | ) | |
| Joe P. Horlen | ) | JURY TRIAL DEMAND |
| Defendant, | ) | |

## I.   JURISDICTION & VENUE

1.     This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under the color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. Section 1658(a). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202.

2.     Pursuant to 28 U.S.C. § 1391 (b)(2), *Southern District Of Texas, Houston Division*, is the appropriate venue because it is where the alleged constitutional deprivations giving rise to this claim occurred.

## II.   PLAINTIFF

3.     Plaintiff, Jerome E. Huff, (Plaintiff/Mr. Huff) is a citizen of the United States of America. Plaintiff is of African descent. Plaintiff currently resides (temporarily) at 3434 Andrew Ave, Pensacola, FL 32505. At all times mentioned herein, Plaintiff resided in College Station, Texas and in Houston, Texas. Where, the Plaintiff entered into an employment contract with Texas A&M University as a Construction Safety adjunct professor/ part-time lecturer for the 2015-2017 academic years.

4.     Texas A&M University is not a party in this action. Texas A&M University is an agent of the State of Texas.

1

### III.     **DEFENDANT**

5.      Defendant, Joseph Paul Horlen, J.D., via public records resides at 11405 Highway 36 N., Brenham, TX. 77833-6372. Defendant's place of employment is Texas A&M University, 3137 TAMU, College Station, TX 77843-3137. At all times of the alleged violations, the defendant maintained an employment contract with Texas A&M University as an associate professor and held the title of Department Head of the Construction Science Department. The defendant was legally responsible for the operations and management of the department. As Department Head, the defendant supervised all departmental faculty, staff, and employees. Defendant managed all faculty appointment and re-appointment contracts within the Construction Science Department on behalf of Texas A&M University.

6.      At all times mentioned in this complaint, the defendant acted under the color of state law. Defendant is sued in his individual capacity. See *Darlak v. Boblar et al.*,814 F. 2d 1055 (5th Cir., 1987) (a suit challenging the constitutionality of a state official's action is not one against the state.).

### III.     **FACTS**

7.      In April 2015, while employed as a construction project manager with Compass Group USA/SSC Service Solutions (SSC) at Texas A&M University campus, the plaintiff guest lectured a "Project Controls" class, on behalf of SSC, at Texas A&M University's Department of Construction. Shortly thereafter, the plaintiff received notice of an opening for a Construction Safety professor in the Department of Construction at Texas A&M University.

8.      In May 2015, the plaintiff approval from SSC's VP of Operations and began the pre-application process to include an interview with the defendant. Defendant recommended hiring based on plaintiff's qualifications. **See Exhibit A_1 thru 5.** In August 2015, plaintiff interviewed with the Dean of Faculty.

**See Exhibit B.** In late August 2015, Texas A&M University hired the plaintiff as a Construction Safety part-time lecturer within the Department of Construction for the 2015-2016 academic year.

9.      On or about August 31, 2015, the defendant executed the appointment contract, on behalf of Texas A&M University, for the 2015 Fall academic year. **See Exhibit C.** On November 30, 2015, defendant executed the 2016 Spring academic year appointment contract. **See Exhibit D.**

10.     The defendant explained reappointment for the 2016 – 2017 academic year was based on a satisfactory performance evaluation. In April 2016, the plaintiff received a performance evaluation rating of "above expectations." **See Exhibit E.** In July 2016, based upon the performance evaluation, the defendant provided notice of reappointment and a salary increase for the 2016 – 2017 academic year. **See Exhibit F.**

11.     In July 2016, the defendant executed and submitted for review and signature the 2016-2017 academic year appointment contracts as fixed term semester appointments dated July 21, 2016. The 2016 Fall semester appointment commenced on September 01, 2016 and terminated on January 15, 2017. **See Exhibit G.** The 2017 Spring semester appointment commenced on **January 16, 2017** and terminated on May 31, 2017. **See Exhibit H.** On August 25, 2016, the plaintiff signed and resubmitted the reappointment contracts for the 2016-2017 academic year.

12.     In August 2016, the defendant's office notified the plaintiff of a clerical error on the 2017 Spring appointment contract. The defendant's secretary explained the plaintiff would need to resign the contract upon correction and after execution by the defendant and the Dean. In October 2016, the defendant's office notified the plaintiff that the 2017 Spring reappointment contract was ready for the plaintiff's signature, however the defendant requested a meeting to explain the error.

13.     On October 27, 2016, the plaintiff met at the defendant's departmental office. Initially, the meeting covered an explanation of the clerical error, which apparently the department entered the incorrect monthly salary. The defendant asked how the plaintiff was managing the increased teaching

3

requirements, and commended the plaintiff on adjusting the new requirements. Prior to concluding the meeting, the defendant inquired about the plaintiff's primary employment as a construction project manager with Compass Group USA/SSC Services Solution (SSC).

14.     The defendant explained he heard the plaintiff was no longer employed with SSC. The plaintiff responded in the affirmative. Plaintiff briefly explained some of the underlining illegal, unlawful, unsafe, and unethical activities the plaintiff viewed, refused to participate in, and reported, which ultimately brought about the separation from SSC.  As well, the plaintiff shared ongoing pay issues with SSC to include violation of the Texas Payday law.

15.     In disbelief, the defendant explained he had not heard about any unlawful or unethical activities. Plaintiff reassured the defendant such activities took place. Plaintiff explained the OSHA and Tex. Gov. Code violations were part of the course lecture.

16.     At the conclusion of the meeting, the plaintiff resigned the 2017 Spring reappointment contract. Before resigning the contract, the plaintiff inquired if he should sign with the original August date or the current date. The defendant instructed the plaintiff to sign with the current date. **See Exhibit I.**

17.     On December 15, 2016, Texas Workforce Commission found SSC Service Solutions violated the Texas Payday. On December 19, 2016, the defendant submitted an email terminating the plaintiff's 2016-2017 appointment contract effective January 15, 2017. The defendant's email stated insufficient student enrollment "for COSC 364 in Spring 2017" as the basis for the termination. **See Exhibit J.** Although, the reason given stated insufficient enrollment, the plaintiff's COSC 364 classes for the Spring 2017 semester were fully enrolled and reassigned. **See Exhibit K.** The defendant gave no further explanation or means of redress. (The College of Architecture Dean nor the Dean of Faculty were copied on the email.)

18.     In December 2016, the plaintiff contacted the College of Architecture Office of the Dean. According to the Dean's office, the Dean had left for the winter-break. Plaintiff was told to contact the

4

office of the Dean of Faculty. The Dean of Faculty office provided an almost word for word response as provided by College of Architecture Office of the Dean.

19.    In February 2017, the plaintiff met with the Equal Employment Opportunity Commission (EEOC) to discuss a discrimination charge filed against SSC Service Solutions.  In that meeting, EEOC explained it appeared Texas A&M University had also discriminated against the plaintiff.

20.    In March 2017, the plaintiff filed a Title VII racial discrimination complaint against Texas A&M University. EEOC forwarded the complaint to the Texas Workforce Commission for investigation. June 2018, U.S. Department of Justice issued a Right to Suit letter. September 2018, Plaintiff filed suit under Title VII against Texas A&M University. February 2020, the court dismissed the case in error. August 2020, plaintiff submitted a rule 4(a)(6) Motion. Court has not rendered an answer on the motion.

## V.    **LEGAL CLAIMS**

### A.    **COUNT I – 42 U.S.C. § 1983: FOURTEENTH AMENDMENT DEPRIVATION CLAIM AGAINST JOSEPH P. HORLEN IN INDIVIDUAL CAPACITY**

21.    Plaintiff realleges and incorporates by reference paragraphs 1-20.

22.    Joseph Horlen acted willfully, deliberately, intentionally, knowingly, and unlawfully deprived the plaintiff (Jerome Huff) of his constitutional property rights guaranteed under the Fourteenth amendment of the United States Constitution. The Fourteenth amendment reads in part, that ("… no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States…nor shall any State deprive any person of life, liberty, or property without due process of law…nor deny any person… equal protection of the laws.") See *United States Constitution*, amend XI. Defendant knew said actions were unlawful and violated established law for (1) he executed the 2017 Spring reappointment contract, (2) he deliberately violated the University's policies governing

5

termination of appointment contracts, (3) he knowingly provided a manufactured pre-text of insufficient COSC 364 enrollment, and (4) the defendant has a law degree.

23.    Property Interest: Plaintiff's property rights were created under the terms and conditions stated in the plaintiff's 2017 Spring Semester reappointment contract. Plaintiff's interest in continued employment began **January 16, 2017** and terminated on May 31, 2017. Therefore, as of January 16, 2017, the plaintiff had a legitimate property interest claim within his 2017 Spring appointment contract. See *Board of Regents of State Colleges v. Roth,* 408 U.S. 564 (1972).

24.    Procedural Due Process: Joseph Horlen not only unlawfully and knowingly deprived the plaintiff of his Constitutionally guaranteed property rights, but Joseph Horlen failed to provide adequate process and/or a hearing prior to termination. As such Joseph Horlen deprived the plaintiff of his Constitutional right of procedural due process. See *Wieman v. Updegraff,* 344 U.S. 183 (    ) ("... a person... in the area of public employment, such as college professors ... dismissed during the terms of their contracts have interests in continued employment that are safeguarded by due process.").

25.    Qualified Immunity: Because Joe Horlen unlawfully and knowingly deprived the plaintiff of his Constitutionally guaranteed property rights as a government official, the doctrine of qualified immunity provides no protection from liability. See *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

## VI.   **JURY DEMAND**

26.    Plaintiff demands a jury trial and on all issues triable by jury.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiff:

27     A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.

28.    The Court issue a citation for defendant to appear and answer, and the plaintiff be awarded a judgment against defendant for the following:

a.   Compensatory Damages of $250, 000.00

b.   Punitive Damages of $50, 000.00.

c.   Prejudgment Interest and Postjudgment interest.

d.   Attorney fees if and when applicable.

e.   Plaintiff's costs in this suit.

f,   All other relief to which the plaintiff is entitled.

Dated: January 16, 2021

Respectfully Submitted,

Mr. Jerome E. Huff
Plaintiff, In Pro Persona
3434 Andrews Ave
Pensacola, FL. 32505
713-292-7981

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Pensacola, FL on January 16, 2021.

Jerome E. Huff
Plaintiff, In Pro Persona

OFFICE OF THE DEAN OF FACULTIES

108 YMCA
1126 TAMU
College Station, TX 77843-1126
Tel: 979.845.4274  Fax:979.845.1822
http://dof.tamu.edu

 **TEXAS A&M** UNIVERSITY

# Transcript/Degree Verification Form

**Hiring Department** Construction Science   **Name** (first, middle initial, last) Jerome Huff

**Date of Birth** 12/11/1969   **Social Security #** 263674651   **Gender** Male

I understand that official verification of my highest degree(s) must be received by Texas A&M University prior to my date of hire. I give my consent for this degree verification.

In addition, I understand that a copy of my official transcript must be on file with my hiring documents. Therefore, I further authorize Texas A&M University to secure official certification (i.e., official transcript) of my highest degree from my granting institution and to have on file with my hiring package. I further understand that my granting institution may use the National Student Clearinghouse, Credentials Solutions, Parchment Inc. and/or Management Information Services to provide my official transcript to Texas A&M University.

## 1st Degree

**Name of Institution** Texas A&M University   **Date Conferred (MM/YYYY)** 12/2013

**City, State, Zip Code** College Station, TX 77843   **Degree Earned/Field of Study** Master of Land and Property Development

**Your name while at institution (if different from above)**   **Student ID #** 421004464

## 2nd Degree

**Name of Institution** Texas A&M University   **Date Conferred (MM/YYYY)** 12/2010

**City, State, Zip Code** Commerce, TX   **Degree Earned/Field of Study** Bachelor of Science in Construction Science

**Your name while at institution (if different from above)**   **Student ID #** 50040692

## 3rd Degree

**Name of Institution** North Lake College   **Date Conferred (MM/YYYY)** 07/2010

**City, State, Zip Code** Irving, TX   **Degree Earned/Field of Study** Associate in Applied Science in Construction Management

**Your name while at institution (if different from above)**   **Student ID #** 2085106

**Faculty Member's Signature**

Jerome Huff   Aug 4, 2015
**Printed Name**   **Date**

**NOTE: Official certification (i.e., official transcript) of highest degree or authorization to secure these credentials must be received in the Dean of Faculties Office to process the initial appointment.**

Revised 2/2015

JEROME HUFF

305 Manuel Dr., Apt C | College Station, TX 77840
jerome443@aol.com | 979.661.1682

May 15, 2015

Joe Horlen
Department of Construction Science
College of Architecture
321 Francis Hall
College Station, Texas 77843-3137

RE: Construction Management Instructor Position

Dear Mr. Horlen,

I am submitting this cover letter along with my Resume and a Student Success Statement for the Construction Management Instructor Position.

I am seeking this position because most recently I had the opportunity to mentor a construction student worker in his second year at Texas A&M University. It was fulfilling to assist this young man in his understanding of the intricate, and sometime confusing, construction procedures and processes. Subsequently, when this opportunity was presented to me by Erica Wozniak, I realize this may be a means to expand the mentorship to more than just one individual.

As an undergraduate student, I gained valuable teaching experience through assisting my professors in classroom instructions, developing presentations, grading exams, coordinating professional training for students, and conducting peer - to - peer tutor sessions. For instance, on different occasions, I taught the graduate level Portfolio Design class for Dr. Ben Cranor at Texas A&M University - Commerce. However, I would say my most recognizable and (surely) my most gratifying accomplishment was working with the university and with Habitat for Humanity to create internship opportunities for numerous construction students that were under my leadership as the President of the Student Construction Association.

Furthermore, I have gained valuable teaching experience (as well as learning experiences) through my professional career as an active Construction Project Manager and ODR at Texas A&M University; as well as, in the past, as a Construction Superintendent with B/CS Habitat for Humanity, and as the Office Engineer on the New Music Building at Texas A&M University in Commerce, Texas. In each of these positions, in one way or another, my job responsibilities mandated that I am either educating faculty members on the construction procedures and processes or I am training student volunteers in the basics of home construction and safety. Therefore, I feel as though my professional experience in both residential and commercial construction will transition seamlessly into the classroom setting.

Needless to say, if granted this opportunity, I will take great pride in ensuring that my success is measured by the success of each student that enters into my classroom. Furthermore, I will work endlessly to provide professional leadership and establish a professional environment at all times. Hence, I am confident that my education and my professional experience will make me a valued member to your team and an asset to Texas A&M University's Construction Department.

I would like to extend my appreciation and my thanks in advance for your time and for your consideration in reviewing my resume, and I look forward to meeting with you and discussing this opportunity further.

Sincerely,

Mr. Jerome Huff
Construction Project Manager II

JEROME HUFF, MLPD, CQM, CDT, LEED GA

305 Manuel Dr., Apt C
College Station, TX 77842
Cell: 979.661.1682 | jerome443@aol.com

## Student Success Statement

A significant amount of research has been completed on the success rates of students in high schools and on the collegiate level. The research has shown that a student's success is based on that student's level of engagement.  And, this engagement is based on the student's **academic, social**, and **emotional** outcomes in their learning environment.

*Academic* engagement refers to how students react to their class assignments, lessons, homework, tests, and their overall practical learning environment. *Social* engagement denotes the student's participatory level in certain activities such as team building activities, developmental organizations, and interaction with classmates. *Emotional* engagement illustrates the personal (one on one) inter-actions students are likely to establish with their professors, instructors, but most importantly, with their academic and professional mentors. Furthermore, the research suggests when students are challenged, encouraged, and supported with a strategic plan that incorporates at least one of the three channels the student's success rate will increase exponentially.

If given the opportunity to teach at Texas A&M University, I will develop a holistic three-part strategy based upon an academic, social, and emotional approach that will enrich each student's opportunity for success. Naturally, in developing this plan, I will draw from my past educational achievements and experiences at Texas A&M University as well as from my professional achievements and experiences. As the basis for my course plan: *Academically*, I will provide the students with a thorough academic foundation of the many project delivery methodologies and construction management processes. In addition, I will use construction management case studies to challenge their analytical and problem solving skills. More importantly, the students will have the unique opportunity of visiting my current construction projects as well as other construction projects here at Texas A&M University. *Socially*, I will encourage each student to interact with the different student construction associations; such as, the Associated General Contractors (AGC), Associated Builder & Contractors (ABC), and the TEXO Association. Likewise, I will encourage the student's to participate in the TEXO Association Construction Management competition held annually in Dallas, Texas. *Emotionally*, I will ensure that all the students understand that my door will always be open, and I will always provide candid feedback while assisting them in their academic and professional development.

Thus, I feel a holistic approach in a student's development will not only induce success in the classroom, but it will have a resounding outcome on the student's future academic and professional careers. Therefore, if I am given the opportunity to enrich the education of the students at Texas A&M University, it will be my goal and my privilege to provide a professional and a holistic learning experience for each student.

Respectfully Submitted,

Mr. Jerome Huff

Mr. Jerome Huff
305 Manuel Dr., Apt C
College Station, TX 77840
979-661-1682
jerome443@aol.com

August 27, 2015

Mr. Mario Rojo del Busto, LL.M.
Assistant Dean of Faculties and Chief of Staff
Director, International Faculty & Scholar Services
Office of the Dean of Faculties | Texas A&M University

Dear Mr. Rojo del Busto,

I am submitting this letter to provide context to the incidents in question following a background check for employment with Texas A&M University as a Part-time OSHA Safety Instructor. It is my intention to assure the reviewing body that the past incidents in question are in the past. However, more importantly, it is my intention to communicate to the reviewing body that I pose no threat to the Texas A&M University community.

In 1999 and in 2002, I was found guilty of felony possession of a controlled substance. Seventeen (17) years ago, I was arrested twice in Houston for possession of drugs whereas the second case was disposed of in 2002. Both incidents were non-violent and victimless. During that time my values were not clear, thus I made a very poor decision to transport vehicles packaged with drugs for money as means to supplement my income. Unfortunately, at that time, the reality that I might be bartering away my future for a few dollars never materialized. Hence, seventeen years later, I find myself explaining (not justifying) those bad choices as the possibility of a better tomorrow lay in the balance.

Since those incidents, I have distanced myself from that life; and in doing so, I have earned numerous professional certifications and licenses to include my most recent training as an Authorized OSHA Safety Trainer. (Please see my resume for a list of professional credentials.) Moreover, I have earned an Associate of Science degree in Paralegal Studies, an Associate of Science degree in Residential Construction Management, a Bachelor of Science degree in Construction Science (minor in Political Science), and a Master of Science degree in Land and Property Development. My bachelor and my master degrees are from Texas A&M University. In January of 2014, I began pursuing my MBA at Prairie View A&M; however, I decided to put my MBA on hold while pursuing a certification as a Construction Document Technician (CDT), a Project Management Professional (PMP), a Certified Construction Contract Administrative (CCCA), and an OSHA Safety Trainer, which I have obtained two out of the four. Nonetheless, I will pick up my MBA studies at Texas A&M University at Corpus Christi in March of 2016. Not to mention, I hope (my pending) part-time employment with Texas A&M University as a safety instructor will be an avenue towards pursuing my Ph.D. studies under Dr. José L. Fernández-Solis in Construction Efficiency Ratings and Construction Safety.

On a side note, while pursuing my associate degree in construction, I was inducted into the Phi Theta Kappa Honor Society. In addition, while earning my bachelor's degree, I was named to the President's Scholars List. Moreover, during my tenor at TAMUC, I was elected by my peers as their president of the Student Construction Association (SCA). As the president of SCA, I was instrumental in establishing a number of events for the construction department. For instance, I worked with Dr. Ben

1 of 2

Cranor and Dr. David Anderson to establish an OSHA 10 Hour safety class. Most notably, in conjunction with Habitat for Humanity and the department, I created an internship opportunity for my fellow construction student's through the Lend-A-Hand project, which allowed the construction students to supervise the faculty/staff and the students in building a Habitat for Humanity house in Greenville, Texas. Also, I spearheaded and lobbied university funds to sponsor the first annual faculty awards luncheon hosted by the students (auspiciously held a week before the final exams). Finally, as personal achievements, I guest lectured Dr. Cranor's Graduate Level Portfolio Writing Class, and I was the first student from TAMUC to be awarded the Texo Construction Scholarship. (Upon request, I can provide my Undergraduate Leadership Portfolio that will lend credence to the above events and more.)

As for my livelihood, I have been employed for over two years as a construction project manager with SSC Service Solutions (I also revealed my felony conviction on my application with SSC as well as with the HR representative.) In my current capacity, I work in close proximity with the faculty/staff and the students at Texas A&M University. Prior to being employed by SSC, I was employed by the B/CS Habitat for Humanity as the construction superintendent, and one of my primary responsibilities with Habitat consisted of training and instructing students in home construction and construction safety. Not to list my entire employment history, but while pursuing my bachelor's degree, I was part of the project team with Byrne Construction on the Texas A&M University-Commerce New Music Building (which my photos of instructing stakeholders are currently in use on the TAMUC Construction Engineering website).

In closing, it is unfortunate our society insists on repayment in perpetuity for past offenses. Even though, the statute of limitations for a victimless drug possession charge like mine is three years, and supposedly an indentured person was freed within 7 years. Undoubtedly, I understand the stigma that is associated with a felony in our society, but how long must I continue to pay for mistakes made 17 years ago. I have made every attempt to pursue and achieve positive endeavors to demonstrate my values are no longer the same, and if given a chance, I will be an asset rather than a liability.

So my question to this honorable body is this: what more do I need to achieve in order to prove that I am not part of the negative imagery portrayed in movies and what we view in the news? Hence, I can assure you, if given this chance, this body will not regret its decision for I will represent myself, my family, and Texas A&M University in a professional and ethical manner. Therefore, I am respectfully requesting this "once in a life-time opportunity" to become a member of the Faculty at Texas A&M University (even if it is only on a part-time basis).

I thank you, in advance, for your time and for your consideration in this very important decision.

Respectively Submitted,

Mr. Jerome Huff, MPLD, LEED, CQM, CDT
College of Architecture | Texas A&M University '13

2 of 2

College of Architecture

Department of Construction Science

 TEXAS A&M UNIVERSITY

August 11, 2015

Jerome Huff
305 Manuel Drive, Apt. C
College Station, Texas 77840

Dear Mr. Huff,

It is my great pleasure to offer you a position as a Visiting Part-Time Lecturer in the Department of Construction Science in the College of Architecture at Texas A&M University. Subject to the approval of the budget by the Board of Regents for the academic year 2015-2016, the terms of your appointment will be as follows:

**For the 2015-16 academic year your appointment is as follows:**

- **Rank: Visiting Part-Time Lecturer, Non-Tenure Accruing**
- **Percent Appointment: 10%**
- **Monthly Salary: $6,500.00**
- **Period of appointment: September 1, 2015 through January 15, 2016**
- **Annual Salary: $2,925.00 (4.5 months x 10%)**

This faculty position is not associated with academic tenure; time in this position does not accrue toward advancement to a tenured appointment, nor can this position be offered concurrently with academic tenure.

**The general conditions of your appointment are as follows:**

a. You are expected to perform teaching and engagement/service duties as generally described and set forth in the Department's *Annual Faculty Evaluation Process and Procedure* and the Department's *Minimum Teaching Credits Policy*. Please review these policies to determine the general expectations of your teaching and engagement/service work during the upcoming year.

b. Your primary responsibility is classroom teaching and you are also expected to make contributions in the area of service.

c. You are expected to complete and turn in an annual report for 2015 no later than January 31, 2016 and participate in an annual review with the Department Head in spring 2016. Your performance will be reviewed pursuant to the Department's *Annual Faculty Evaluation Process and Procedure*.

d. You are expected to be aware of and abide by all applicable Federal, State, System, University, College, and Department laws, policies and rules. The University policies are published on the Dean of Faculties website at dof.tamu.edu. The college policies are published on the college website at arch.tamu.edu. You should consult the policies and rules as well as the latest edition of the Faculty Handbook.

e. You are expected to successfully complete all mandatory training required by the State, System and University before the assigned deadline.

f. You are expected to carry out your assignments in a professional manner that promotes the interests of the Department, College, University, our students, your colleagues, and the public interest of the construction industry, the community, the state, and the nation.

Francis Hall
3137 TAMU
College Station TX 77843-3137

College of Architecture



November 30, 2015

Mr. Jerome Huff
3137 TAMU
College Station, TX 77843-3137

Dear Mr. Huff,

We are pleased to offer you continued employment as a member of the faculty of the Department of Construction Science. The terms of your appointment are set forth herein.

For the 2015-16 academic year your appointment is as follows:
- Rank: Part-time Lecturer, Non-Tenure Accruing
- Percent Appointment: 10%
- Monthly Salary: $6,500.00
- Period of Appointment: January 16, 2016 through May 31, 2016
- Total Salary: $2,925.00 (4.5 months x $6,500.00 x 10%)

This faculty position is not associated with academic tenure. Time in this position does not accrue toward advancement to a tenured appointment, nor can this position be offered concurrently with academic tenure. This appointment is for the term stated above in the "Period of Appointment", and is subject to renewal at the end of the appointment.

The general conditions of your appointment are as follows:

- You are expected to perform teaching duties as generally described and set forth in the Department's *Annual Faculty Evaluation Process and Procedure* and the Department's *Minimum Teaching Credits Policy*. Please review these policies to determine the general expectations of your teaching work during the period of appointment.

- Your primary responsibility is classroom teaching with only minimal engagement/service.

- You are expected to complete and turn in an annual report for 2015 no later than January 31, 2016 and participate in an annual review with the Department Head in spring 2016. Your performance will be reviewed pursuant to the Department's *Annual Faculty Evaluation Process and Procedure*.

- You are expected to be aware of and abide by all applicable Federal, State, System, University, College, and Department laws, policies and rules. The University policies are published on the Dean of Faculties website at dof.tamu.edu. The college policies are published on the college website at arch.tamu.edu. You should consult the policies and rules as well as the latest edition of the Faculty Handbook.

- You are expected to successfully complete all mandatory training required by the State, System and University before the assigned deadline.

1 of 2

- Please note that University Rule 12.01.99. M2 *University Statement on Academic Freedom, Responsibility, Tenure, and Promotion* states that faculty members are obligated to fulfill the terms of employment for the following year unless they resign prior to 30 days after receiving this notification.

- You are expected to carry out your assignments in a professional manner that promotes the interests of the Department, College, University, our students, your colleagues, and the public interest of the construction industry, the community, the state, and the nation.

The special conditions of your appointment are as follows:

- **Teaching:** You are expected to teach 1 course(s) during the period of your appointment. The course(s) you teach will be determined by the department head in consultation with the department's executive committee, the program coordinators, and you based on the needs of the department. Teaching includes classroom and laboratory instruction. Excellence in teaching is a primary mission of the Department and the College.

- **Conditions of Previous Annual Review:** You are expected to comply with all the expectations set forth in your spring 2016 Faculty Annual Evaluation Review Form and prospectus.

Your general and special duties may be adjusted as required by the needs of the department during the period of your appointment. Any such adjustments must be made in writing.

Please indicate your acceptance by signing this letter below and returning the original to the Construction Science Department. All of us in the college look forward to working with you.

Sincerely,

Joe Horlen, J.D.
Department Head

Jorge Vanegas, Ph.D.
Dean

Mr. Jerome Huff

Date    12/3/15

Copies:    Dr. Blanca Lupiana, Interim Dean of Faculties and Associate Provost
Chris Novosad, Assistant Dean for Finance and Administration College of Architecture

2 of 2

**Faculty Annual Review Form**
**Construction Science Department**
**For the Year ending December 31, 2015**

Name: Jerome Huff                Rank: PT Lecturer                Meeting Date: *4-29-16*

| Area | 2015 Percent Appointment | Most Meritorious/Excellent (6) | Significantly Above Expectations (5) | Above Expectations (4) | Satisfactory/ Meets Expectations (3) | Unsatisfactory/ Below Expectations (2) | Significantly Below Expectations (1) | Weighted Score |
|---|---|---|---|---|---|---|---|---|
| Teaching | 100 | | | X | | | | 4.0 |
| Research | | | | | | | | |
| Service / Engagement | | | | | | | | |
| Prospectus | | | | | | | | |
| Achievement toward Tenure / Promotion | | | | | | | | |
| Overall Evaluation | | | | X | | | | 4.0 |

**Evaluation:** Good start to teaching. Work to improve your class pursuant to your self-evaluation and prospectus. Seek advice from Anne McGowan as needed.

**Expectations:** Work closely with new Assessment Coordinator to ensure proper student learning outcomes are identified, measured, and improvements are implemented as a result in your courses. Work to engage students in the learning process and they will respond. Continue seeking opportunities to engage in department activities.

**2016 Appointment:    Teaching 100%;    Research 0%;    Engagement 0%;    Total 100%**

Joe Horlen, Department Head                    Received by Faculty Member

Date: *4-29-16*                                        Date: _____

See the Department of Construction Science Annual Faculty Evaluation Process and Procedure and Minimum Teaching Credits Policy.